IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VIVIAN A. JOHNSTON                                                                PLAINTIFF

v.                           CIVIL NO. 07-3056

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff Vivian A. Johnston brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and disabled widow's insurance benefits (DWB) under the provisions of Title II of the Social Security Act. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

On April 18, 2003, plaintiff applied for DIB and also DWB on her husband's earning record alleging and inability to work since November 1, 2001, due to severe depression, short term memory problems, extreme leg pain and swelling, extreme fatigue and heart problems. (Tr. 392-395). Plaintiff's claim was approved as of April 1, 2003. (Tr. 12, 37-40). For DIB purposes, plaintiff's date last insured is June 30, 2007. (Tr. 57?) For DWB purposes, the relevant time period is May 1995 through May 2002. As to the issue of onset only a timely

request for a hearing was filed. (Tr. 12). On August 15, 2005, a hearing was held before an administrative law judge (ALJ), at which plaintiff appeared with counsel. (Tr. 407-438). Plaintiff alleges disability beginning November 1, 2001, rather than the found onset date of April 1, 2003.

By written decision dated October 12, 2005, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 19). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform light work. (Tr. 19). More specifically, the ALJ found plaintiff could lift and/or carry and push and/or pull no more then ten pounds frequently or twenty pounds occasionally, respectively; to stand and/or walk no more than six hours of an eight-hour day; to sit no more than six hours of an eight-hour day; and to engage in no more than occasional stooping and crouching. (Tr. 19). The ALJ determined, during the relevant time period, plaintiff could perform her past relevant work as a retail cashier. (Tr. 19).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on September 5, 2007. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 7, 10).

## II.  Evidence Presented:

At the August 15, 2005, administrative hearing plaintiff was fifty-six year of age and obtained a highschool education. (Tr. 410). Plaintiff's past relevant work consists of work as a home health aide, cashier and manager/waitress. (Tr. 60, 88, 410-414).

The pertinent medical evidence during the relevant time period states the following. On April 8, 2002, plaintiff entered the Baxter Regional Medical Center (Baxter) emergency room complaining of burning, frequent urination since the previous day. (Tr. 185). Treatment notes indicate plaintiff was taking Synthroid. (Tr. 186). Plaintiff also complained of congestion. Plaintiff was diagnosed with a urinary tract infection.

On April 22, 2002, plaintiff entered the Baxter emergency room complaining of a cough, chest congestion, and chest pain when she coughed or took a breath for the past week. (Tr. 180). A chest x-ray revealed chronic obstructive pulmonary disease (COPD), mild to moderate, and suggestive evidence of acute or active inflammatory process (moderate bronchitis and mild congestion). (Tr. 183). Plaintiff was diagnosed with acute bronchitis and COPD.

Progress notes dated May 31, 2002, report plaintiff's complaints of pain and knots in her knees and elbows. (Tr. 225, 378). Plaintiff also requested a hormone shot. Plaintiff reported an increase in anxiety and occasional diarrhea. Treatment notes indicate plaintiff just moved back and lives alone. Plaintiff's medications consisted of Soma, Synthroid and Xanax. Plaintiff reported she smoked one package of cigarettes a day. Plaintiff was diagnosed with hypothyroidism, depression, irritable bowel syndrome and anxiety.

On June 12, 2002, plaintiff complained of nausea, vomiting and diarrhea for the past week. (Tr. 222, 381). Plaintiff was diagnosed with nausea and vomiting and abdominal pain.

On June 13, 2002, plaintiff entered the Baxter emergency room complaining of weakness, shortness of breath, bilateral leg pain, diarrhea, nausea and pain in the mid abdomen for the past week. (Tr. 176-177). Treatment notes indicate plaintiff reported smoking one and one-half packages of cigarettes a day. (Tr. 177). A review of systems indicated plaintiff was positive for shortness of breath, a cough, nausea, vomiting, diarrhea, muscle spasm and achiness and weakness and negative for depression or anxiety. (Tr. 178). Plaintiff rated her pain as a four on a scale of ten. (Tr. 177). A chest x-ray revealed perihilar post inflammatory residuals, but no acute process or significant interval change. (Tr. 172). Plaintiff was diagnosed with pneumonia and started on medication.

On June 15, 2002, plaintiff was admitted in to Baxter after reporting she was feeling worse. Plaintiff was admitted with gastroenteritis and pneumonia. (Tr. 154, 170). Plaintiff reported experiencing achiness in her legs for the past week. (Tr. 155). Upon admission, Dr. Timothy C. Paden noted plaintiff was a well-nourished, well-developed, mildly dehydrated female in no acute distress. (Tr. 155). Dr. Paden noted plaintiff's abdomen was soft with some mild upper abdominal tenderness. No cyanosis, clubbing or edema was noted in plaintiff's extremities. Plaintiff's mood and affect appeared normal. Treatment notes report plaintiff smoked one and one-half packages of cigarettes a day and listed her occupation as home health/waitress. (Tr. 164). While admitted plaintiff underwent a colonoscopy performed by Dr. William Dyer. (Tr. 158-159, 161-162). Dr. Dyer diagnosed plaintiff with a sessile polyp in the sigmoid colon, a normal illeum and normal mucosa in the right colon. Dr. Dyer recommended plaintiff await biopsy results, eat a fiber rich diet and follow-up in three years if adenomatous, ten years if hyperplastic or otherwise benign. Plaintiff's symptoms improved with conservative

therapy and she was discharged on June 19, 2002, with instructions to follow-up with Dr. Paden in one week. (Tr. 152). Plaintiff's discharge medications consisted of K-Dur, Synthroid, Flagyl and Levaquin. The discharge notes further indicate plaintiff lived alone and did not have a problem with depression. (Tr. 168).

Progress notes dated June 24, 2002, report plaintiff was in for a follow-up from the hospital. (Tr. 218, 384). Treatment notes indicate plaintiff had a polyp removed from her colon.

Progress noted dated July 9, 2002, report plaintiff's complaints of left leg and knee pain. (Tr. 217, 386). Plaintiff underwent x-rays of her knees which revealed mild degenerative change in both knees. (Tr. 228). Plaintiff was diagnosed with left knee pain and s/p pneumonia treatment.

Progress notes dated November 13, 2002, report plaintiff's complaints of leg pain, stomach pain, a lack of energy and diarrhea for the past two weeks. (Tr. 214, 389). Plaintiff reported she wanted to stop smoking and requested a handicap sticker. A chest x-ray revealed no acute infiltrate of effusion. (Tr. 228). Plaintiff was diagnosed with left knee pain, fatigue, history of irritable bowel syndrome, diarrhea, COPD, smoker and depression.

Progress notes dated March 19, 2003, report plaintiff's complaints of a left knee that "gives out," tender left ribs and that she twisted the right side of her neck and right shoulder. (Tr. 213, 391). Plaintiff also requested a hormone shot. A left knee x-ray revealed degenerative changes medially and mild degenerative change; and the patella appeared intact and in good alignment. (Tr. 385). Plaintiff was diagnosed with left knee pain, irritable bowel syndrome, hypothyroid, occasional palpitation and depression.

**III.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.1520.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled since November 1, 2001, her alleged onset date. Defendant contends the record supports the ALJ determination that plaintiff was not disabled prior to April 1, 2003.

    **A.    Subjective Complaints and Credibility Analysis:**

In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the

-7-

record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

The record reflects that during the relevant time period plaintiff sought treatment for a urinary tract infection, COPD, bronchitis, knots in her knees and elbows, irritable bowel syndrome and knee pain. The medical evidence reveals plaintiff would report having symptoms for the past day, week or two weeks and treatment notes indicate these symptoms were relieved with conservative care. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998); *See Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). It is also noteworthy, that while plaintiff clearly had respiratory problems she continued to smoke a package to a package and a half each day. We find substantial evidence of record to support the ALJ's determination that the above impairments were not disabling during the relevant time period.

With regarding plaintiff's claim of disabling depression/anxiety prior to April 1, 2003, the ALJ found during the relevant time period plaintiff did not have a severe mental impairment because her depression and anxiety were controlled with medication. Specifically, the ALJ found plaintiff did not have any restrictions of her activities of daily living or maintaining social functioning; had no deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and that there was no evidence of plaintiff having

experienced any episodes of deterioration or decompensation in work or work-like settings. (Tr. 18).

In support of this finding, the ALJ pointed out that plaintiff sought sporadic treatment during the relevant time period and that when conservative medication was used and plaintiff took the medication as prescribed her symptoms improved. On June 13, 2002, treatment notes indicate plaintiff was negative for depression and anxiety. (Tr. 178). The record reflects plaintiff reported she was not having problems with depression and anxiety when she was discharged from the hospital on June 15, 2002. (Tr. 168). The record further reflects that in July of 2001, prior to the alleged onset date, plaintiff's physician recommended that she seek counseling from a mental health professional. Plaintiff did not pursue this recommendation which further supports the ALJ's determination that plaintiff's mental impairments were successfully treated with medication during the relevant time period. In fact, prior to April of 2003, plaintiff had never sought treatment from a mental health professional. It should also be noted that agency medical consultants also opined that plaintiff did not have a severe mental impairment prior to April 2003. Based on the record as a whole, we find substantial evidence to support the ALJ's determination that while her depression/anxiety was medically determinable they were successfully treated with medication and therefore were not severe during the relevant time period.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The record reflects that during the relevant time period plaintiff was able to take care of her personal needs; perform many household chores including laundry, dishes, changing sheets and iron; shop for groceries and go to the bank and post office; prepare simple meals;

AO72A
(Rev. 8/82)

sometimes drive and walk for errands and exercise; and watch television, listen to the radio and read. (Tr. 72-73). Plaintiff testified that due to both physical and mental problems someone had lived with her and taken care of her since the death of her husband in 1995. (Tr. 431). However, a review of the record shows plaintiff reported she was living alone in 2002. (Tr. 168, 225). It is also noted that in November of 2003, plaintiff reported that prior to her heart attack/surgery she considered enrolling in to Arkansas State University, Mountain Home. (Tr. 240). Had plaintiff been as incapacitated as alleged it is hard to believe she would have been contemplating enrolling in school.

With regard to the testimony of Ms. Marjorie Cornwell at the August 15, 2005, administrative hearing, it would have been preferable for the ALJ to have specifically addressed this testimony; however, the reasons the ALJ gave for discrediting plaintiff would have served as bases for discrediting Ms. Cornwell as well. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000) (ALJ's failure to give specific reasons for disregarding testimony of claimant's husband was inconsequential, as same reasons ALJ gave to discredit claimant could serve as basis for discrediting husband).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she was unable to engage in any gainful activity during the time period in question. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of

-10-

total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

### B.     RFC Assessment:

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and her medical records. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on her activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

-11-

AO72A
(Rev. 8/82)

Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

### C.  Past Relevant Work:

We believe substantial evidence supports the ALJ's conclusion that plaintiff could have returned to her past relevant work as a retail cashier during the time period in question. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2.  The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Thus, even though a claimant may not be able to perform the actual demands of her particular past job, if she can carry out her job as it is generally performed in the national economy, she is not disabled under the regulations. *See Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994). Based on the above requirements, we find substantial evidence to support the ALJ's determination that plaintiff can perform her past relevant work as a retail cashier.[1]

---

[1] The Dictionary of Occupational Ttiles (DICOT) classifies the position of retail cashier as light work. *See* DICOT 211.462-014, 1991 WL 671841 (G.P.O).

### D. Fully and Fairly Develop the Record:

We reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding plaintiff's capabilities during the relevant time period. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of February 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)